# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00668-COA

**LAWRENCE REED A/K/A LAWRENCE**        **APPELLANT**
**PERRYN REED A/K/A LAWRENCE P. REED**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/12/2015 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| |    GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| |    JASON L. DAVIS |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MURDER AND SENTENCED TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TO RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED |
| DISPOSITION: | AFFIRMED - 11/29/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. On March 12, 2015, Lawrence Reed was convicted of the murder of Marco McMillian[1] after the jury heard evidence that Reed strangled McMillian with a wallet chain,

---

[1] McMillian, at the time of his death, had qualified as a candidate for the office of mayor of the City of Clarksdale, Mississippi.

pushed him out of a vehicle, dragged his body to a watery ditch, and put his body into the water. At trial, several statements made by Reed to law enforcement were admitted without objection from Reed's counsel except for one. Every statement had been preceded by a *Miranda*-rights waiver, each being recorded audibly or signed in writing. No suppression hearing was requested prior to trial. On direct appeal, Reed asserts that his trial counsel's assistance was constitutionally ineffective due to counsel's failure to request a suppression hearing on Reed's statements. We affirm the circuit court's judgment of Reed's conviction for the murder of McMillian.

## FACTUAL BACKGROUND

¶2.     At trial the following individuals testified concerning statements made to them by Reed: Trooper Milton Williams, of the Mississippi Highway Patrol; Lenora Dampier, Reed's girlfriend; Investigator Joseph Wide, of the Coahoma County Sheriff's Office; Investigator Bryan Sullivant, of the Mississippi Bureau of Investigations (MBI); and Investigator Marena Jones, of the Coahoma County Sheriff's Office. Reed testified at trial. From that testimony, the following factual background was established.

¶3.     On the night of February 25, 2013, Reed accompanied McMillian in McMillian's vehicle to a party in Quitman County. Before arriving at the party, McMillian drove the vehicle down a rural road where McMillian parked the vehicle. During this time, the two proceeded to smoke marijuana and consume alcohol. Reed stated that McMillian watched pornographic material on his phone and masturbated, McMillian asked him what he did sexually with his female partners, and McMillian attempted to touch his wallet and grab his

2

shirt. Reed then choked McMillian using Reed's wallet chain. After McMillian became unresponsive, Reed pushed his body out the vehicle's driver-side door. Reed took McMillian's body down to a ditch and pushed his body into the standing water in the ditch. Reed then put McMillian's body into the backseat of the vehicle and drove back toward Clarksdale. While driving, he called his girlfriend, Dampier, and told her that he had killed McMillian.

¶4.     After returning to town, Reed went to his house to get some clothes "because [he did not] want to have on the same clothes." Then, Reed went to a gas station to purchase some gasoline. Next, Reed drove for a distance, stopped, exited the vehicle, and attempted to burn McMillian's phone with the recently purchased gasoline, "trying to get rid of the phone because [he] knew the police could track the phone where [he] was at." When the phone did not burn fast enough for Reed, he cracked it, took the battery out, and threw the phone, striking a light pole. Reed then drove out to an isolated area of a levee, stripped McMillian's clothes from his body, lifted his body through a barbed-wire fence, and, using the remaining gas he had purchased from the gas station, attempted to burn his body. Reed's attempted cremation of McMillian's body failed. Reed left the area, leaving McMillian's body.

¶5.     While driving, Reed threw McMillian's identification and wallet out the car window. Next, Reed stopped, got something to eat, purchased more gasoline for the car, and threw McMillian's clothes, as well as his own sweatshirt, into a dumpster. Reed then drove around. While driving, Reed went to Dampier's residence. Both Dampier and her sister were at the residence when Reed arrived, and both told Reed to leave. Reed left the residence, then

3

returned. Reed was again told to leave. After leaving the second time, Reed collided with another vehicle. Emergency personnel responded, and Reed was placed in an ambulance. Officer Williams arrived on the scene and went to the ambulance to get information from Reed about the accident. Reed told Williams that he had killed a person. Williams then Mirandized Reed, and Reed gave a statement to Williams, which was recorded via a body microphone on Williams's person. Reed was then taken to "The Med" trauma center in Memphis, Tennessee.

¶6.     While at the Med, Reed spoke to Officer Wide in his room. After Wide told Reed that he could not talk to him, Reed persisted. Wide stopped Reed again, and told him that Wide would have to read him his *Miranda* rights if he wanted to talk. After Reed indicated he still wanted to talk to Wide, Wide read Reed his rights. Reed then made a statement to Wide recounting the events of the night. Later, Investigator Sullivant went to Reed's hospital room, where he read Reed his *Miranda* rights. Afterwards, Reed gave a statement recounting the events of the night. Reed's waiver of his rights and statement to Sullivant were both recorded.

¶7.     On March 14, 2013, Investigator Jones spoke to Reed; however, Reed refused to speak to her. Sometime after, Jones went on military leave. While Jones was on military leave, Reed wrote letters to Jones requesting that he be allowed to speak with her. After conferring with the district attorney's office and the Coahoma County Sheriff's Office, Jones spoke with Reed on July 8, 2013. Reed told Jones that he wanted to show her the route that he took the night of February 25 and the morning of February 26. Jones read Reed his

*Miranda* rights, Reed waived his rights, and Reed directed Jones and other officers along the route that he traveled that night and the following morning. Jones's reading of Reed's rights, Reed's waiver, and Reed's directions were all recorded.

¶8.     On February 11, 2014, Reed was indicted for the  murder of McMillian under Mississippi Code Annotated section 97-3-19 (Rev. 2014). On March 9, 2015, a jury trial commenced. Prior to oral arguments, the circuit court allowed for the preadmission of certain exhibits, including the dash-camera video and audio recording of Reed's statement to Officer Williams at the scene of the accident. The circuit court asked Reed's counsel if there was any objection to preadmitting the recording. Reed's counsel stated that there was no objection. Williams later testified that, though Reed appeared "very injured," he understood to whom and about what he was talking.

¶9.     At trial, Dampier, Reed's girlfriend, testified that Reed said he killed McMillian. She testified that her sister informed police that Reed had said that he killed McMillian. Investigator Wide testified that Reed initiated the conversation with him in the hospital, that he stopped Reed, that he told Reed that he could not talk to him, and that, after Reed persisted, he told Reed that he would have to read him his *Miranda* rights if Reed was going to continue to talk to him. Reed waived his rights and proceeded to tell Wide that he killed McMillian and recounted the events of that night and morning. Reed's counsel did not object to Wide's testimony.

¶10.    Investigator Sullivant testified that Reed gave his statement after being read his *Miranda* rights and that Reed had a "clear mind" when he gave his statement. Reed

5

recounted the events of the night and morning in his statement. Reed's counsel did not object to the substance of Sullivant's testimony. On redirect examination, Reed's counsel objected to the introduction of the recording of Reed's statement to Sullivant for impeachment purposes only.

¶11.    Investigator Jones testified that, after Reed told her he did not want to talk, Reed wrote multiple letters to her, that she subsequently spoke with Reed, that she read him his rights, that he told her he killed McMillian, and that he showed her the route that he traveled the night he killed McMillian. When Reed's counsel was asked if he objected to the introduction of the recording from the drive, he stated that he did not object. Reed's counsel later objected "to everything that had been prior to that point" when the recording started.

¶12.    Reed testified that he killed McMillian, pushed McMillian out of the vehicle, and put him in water in a ditch. Reed also testified that he burned and attempted to destroy McMillian's cellular phone, tried to cremate McMillian's body, and threw away McMillian's phone, identification, wallet, and clothes, all in an effort to conceal McMillian's death. Reed further testified that he did not dispute anything in Williams's recorded statement, that he voluntarily made a statement to Wide, that he did not have an attorney when he contacted Jones, that he showed Jones the route he took the night of McMillian's death, and that he did not deny killing McMillian.

¶13.    On March 12, 2015, Reed was found guilty of the murder of McMillian and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. Reed appealed his conviction to this Court.

**DISCUSSION**

¶14.   Reed's lone claim on appeal is that his trial counsel's assistance was ineffective for failing to request a suppression hearing on Reed's statements to police. Specifically, Reed asserts the statements were made when he was under the influence of alcohol and marijuana, when he was in pain and in the hospital, and after he had retained counsel.

¶15.   Traditionally, ineffective-assistance-of-counsel claims are more appropriately brought in the form of a motion for postconviction relief (PCR). *Dartez v. State*, 177 So. 3d 420, 422-23 (¶18) (Miss. 2015) (citing *Archer v. State*, 986 So. 2d 951, 955 (¶15) (Miss. 2008)). This is because an appellate court is limited to the trial-court record in its review of claims on direct appeal, and instances can arise where there is insufficient evidence or information within the record to adequately address the claim. *Id*. When there is insufficient evidence or information to address the claim adequately, the proper procedure is to decline to address it so as to preserve the defendant's right to argue it through a petition for PCR. *Id*. However, the claim may be addressed on direct appeal if it is based on facts fully apparent from the record. *Id*. (citing M.R.A.P. 22).

¶16.   The claim should only be addressed when "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Johnson v. State*, 196 So. 3d 973, 975 (¶7) (Miss. Ct. App. 2015); *see also Read v. State*, 430 So. 2d 832, 841-42 (Miss. 1983). Here, the parties do not stipulate that the record is adequate for the appellate court to make a finding on direct appeal.

Thus, the only proper inquiry is whether the record affirmatively shows that Reed was denied effective assistance of counsel. "Where the record cannot support an ineffective-assistance-of-counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for [PCR]." *Johnson*, 196 So. 3d at 975 (¶8); *see also Read*, 430 So. 2d at 837.

¶17. To prevail on an ineffective-assistance-of-counsel claim, the defendant must prove that (1) his attorney's performance was deficient, and (2) the deficiency was so substantial as to deprive him of a fair trial. *Dartez*, 177 So. 3d at 423 (¶19) (citing *Holly v. State*, 716 So. 2d 979, 989 (Miss. 1998) (applying the two-pronged test for ineffective-assistance-of-counsel claims announced in *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984))). Whether counsel's efforts were both deficient and prejudicial is examined based on the totality of the circumstances. *Id*. "There is a strong[,] but rebuttable[,] presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Only where it is reasonably probable that, but for the attorney's errors, the outcome would have been different, will [the court] find that counsel's performance was deficient." *Id*.

¶18. There is a strong presumption that trial counsel's actions, or lack thereof, fall within the ambit of sound trial strategy. *Taylor v. State*, 167 So. 3d 1143, 1146 (¶7) (Miss. 2015). Here, there is nothing from the record to indicate why Reed's trial counsel did not request a suppression hearing. But without more, it is plausible that not doing so was a part of his trial strategy given (1) that Reed's counsel did not object to the admission of Reed's confessions through the officers' testimony, (2) the preadmission of certain exhibits, and (3)

8

Reed's multiple post-*Miranda* confessions to police and Reed's confession to his girlfriend. It may very well be that Reed's counsel could find no basis for suppression and that it would have been fruitless to request a hearing.[2]

¶19.    We cannot say that the trial record, standing alone, validates Reed's ineffective-assistance-of-counsel claim, and given the overwhelming number of Reed's properly admitted confessions and Reed's additional confession at trial, we affirm.

## CONCLUSION

¶20.    We affirm the Quitman County Circuit Court's judgment of Reed's conviction for murdering McMillian, finding no ineffective assistance of counsel based on the record before us on direct appeal.

¶21.    **THE JUDGMENT OF THE CIRCUIT COURT OF QUITMAN COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TO RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO QUITMAN COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, AND WILSON, JJ., CONCUR.  JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

---

[2] We note that even if Reed's counsel were rendered ineffective by failing to request a suppression hearing, there was ample other evidence of Reed murdering McMillian. Dampier testified that Reed told her that he killed McMillian and that her sister told police that Reed said he killed McMillian. Further, notwithstanding any of Reed's testimony concerning his statements to any of the officers, Reed testified that he killed McMillian, pushed his body out of the vehicle and into the water-filled ditch, attempted to destroy McMillian's cellular phone, attempted to cremate McMillian's body, and threw away McMillian's phone, wallet, clothes, and identification in an effort to conceal McMillian's death.