# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00853-COA

JOHN F. WARE A/K/A JOHN FITZGERALD                    APPELLANT
WARE A/K/A JOHN WARE

v.

STATE OF MISSISSIPPI                                              APPELLEE

DATE OF JUDGMENT:               06/16/2017
TRIAL JUDGE:                    HON. CHRISTOPHER A. COLLINS
COURT FROM WHICH APPEALED:      SCOTT COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: MOLLIE MARIE MCMILLIN
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: KATY TAYLOR GERBER
DISTRICT ATTORNEY:              STEVEN SIMEON KILGORE
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 09/18/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., FAIR AND WILSON, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     A jury in the Scott County Circuit Court convicted John Ware of possession of a

deadly weapon by a convicted felon.[1]  The trial court sentenced Ware as a habitual offender

under Mississippi Code Annotated section 99-19-81 (Rev. 2015) to ten years in the custody

of the Mississippi Department of Corrections, with two years suspended and two years of

postrelease supervision.  Ware's trial counsel filed a posttrial motion, which the trial court

---

[1] Ware had four prior felony convictions—two for business burglary and two for
possession of methamphetamine.

denied.

¶2.     Through his appointed appellate counsel, Ware appeals arguing that the evidence was insufficient to support the guilty verdict. Ware also filed a pro se brief asserting ineffective assistance of counsel and an illegal sentence.

**FACTS**

¶3.     On June 25, 2016, around 11:00 pm, Sergeant Timothy Lloyd with the Scott County Sheriff's Department responded to a 911 call about a domestic disturbance between Ware and his wife, Francis, at their house. When Sergeant Lloyd arrived, Ware was washing a car in the driveway, and Francis was inside the house. Sergeant Lloyd testified that he spoke with Francis, who informed him that Ware did not live at the house and that she wanted Ware to leave the premises. While speaking with Ware, Sergeant Lloyd looked into Ware's car and noticed a large knife with gray duct tape wrapped around the handle. Sergeant Lloyd stated that Ware said the knife was for his protection. Sergeant Lloyd confiscated the knife, later turning it over to Investigator Bill Patrick, who also was with the Scott County Sheriff's Department.

¶4.     Investigator Patrick testified that he believed the knife was a butcher knife based on the length of the blade (approximately eight inches) and the curved tip. Aware that Ware had at least one prior felony conviction, Investigator Patrick brought Ware in for questioning. After waiving his *Miranda*[2] rights, Ware told Investigator Patrick that he kept the knife in his car for protection.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶5.     During trial, Ware stated that he used the knife as a household tool.

## DISCUSSION

### I.     Insufficient Evidence

¶6.     Ware first argues that the evidence was insufficient to support the guilty verdict. Specifically, Ware contends the State failed to produce sufficient evidence that the knife was a butcher knife.

¶7.     In reviewing the sufficiency of the evidence, "the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed. . . ." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (internal quotation mark omitted), *overruled on other grounds by Little v. State*, 233 So. 3d 288 (Miss. 2017). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. *Id.* Furthermore, it is well-settled law that the jury determines the credibility of the witnesses and resolves conflicts in the evidence. *Davis v. State*, 866 So. 2d 1107, 1112 (¶17) (Miss. Ct. App. 2003).

¶8.     Mississippi Code Annotated section 97-37-5(1) (Rev. 2014) states: "It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm or any bowie knife, dirk knife, [or] butcher knife . . . ." The indictment charged Ware with possession of a butcher knife as a convicted felon.

3

¶9.     We first note that Ware failed to preserve for appeal any objection or assignment of error relating to the lack of a specific definition for a butcher knife. And Ware never requested a jury instruction to define butcher knife, nor did he define it for the jury. Regardless of any procedural bar, we will address the merits.

¶10.    Ware cites to *Harris v. State*, 172 So. 3d 191 (Miss. Ct. App. 2014), for support. In *Harris*, the defendant argued that the State did not prove he possessed a butcher knife. *Id.* at 194 (¶7). We noted more than one definition of a butcher knife, including "a heavy-duty knife, usually six to eight inches long having a broad rigid blade that curves slightly at the tip" and "a large, very sharp knife for cutting or trimming meat." *Id.* at 194-95 (¶10). Finding that the knife Harris possessed did not fit either description, we reversed his conviction. *Id.* at 195 (¶10). As noted, the knife possessed by Harris was "not large or heavy duty and [did] not have a broad blade that curve[d] slightly at the tip." *Id*.

¶11.    Here, Investigator Patrick testified that the blade of the knife was approximately eight inches with a curved tip and a sharp edge. The jury viewed the knife after it was admitted into evidence during Sergeant Lloyd's testimony. From the evidence presented, we find that the evidence was sufficient for the jury to conclude that Ware possessed a butcher knife.

## II.     Ineffective Assistance of Counsel

¶12.    In his pro se brief, Ware argues that his trial counsel, Shawn Harris, was ineffective for two reasons. The first concerned his attorney's pretrial actions, and the second concerned his attorney's posttrial actions. But ineffective-assistance-of-counsel claims are more appropriately brought in postconviction relief proceedings. *See Williams v. State*, 228 So.

4

3d 949, 952 (¶12) (Miss. Ct. App. 2017). A claim for ineffective assistance of counsel should only be addressed on direct appeal where "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Reed v. State*, 204 So. 3d 785, 789 (¶16) (Miss. Ct. App. 2016) (quoting *Johnson v. State*, 196 So. 3d 973, 975 (¶7) (Miss. Ct. App. 2015)). Here, the State stipulates that the record is adequate for this Court to make such a finding only regarding Ware's posttrial ineffective-assistance-of-counsel claim. We will address each claim separately.

¶13.    In an ineffective-assistance-of-counsel claim,

> a defendant must show that: (1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense. The burden of proof rests with the defendant to prove both prongs. Under *Strickland*,[3] there is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. To overcome this presumption, the defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.

*Renfrow v. State*, 202 So. 3d 633, 636 (¶7) (Miss. Ct. App. 2016) (quoting *Maggitt v. State*, 26 So. 3d 363, 365 (¶12) (Miss. Ct. App. 2009)). There is also a presumption that decisions made by defense counsel are strategic, and this Court "will not second-guess counsel's decisions that fairly may be characterized as strategic." *Shinn v. State*, 174 So. 3d 961, 966 (¶12) (Miss. Ct. App. 2015). Finally, we look "at the totality of circumstances to determine whether counsel's efforts were both deficient and prejudicial." *Howell v. State*, 163 So. 3d

---

[3] *Strickland v. Washington*, 466 U.S. 668 (1984).

240, 259 (¶49) (Miss. 2014) (quoting *Williams v. State*, 73 So. 3d 1125, 1129 (¶12) (Miss. 2011)).

### A. Pretrial Claim

¶14. Because the State argues that there is insufficient evidence in the record to address Ware's claim of pre-trial ineffective assistance of counsel, we must determine whether the record affirmatively shows that Ware was denied effective assistance of counsel. Ware claims Harris had a conflict of interest since he was representing Ware in a workers' compensation case prior to the criminal charges in this case. Ware claims he wanted to plead guilty but that Harris wanted him to wait until the workers' compensation case was settled. According to Ware, Harris led him to believe the criminal charges would be dismissed or that his sentence would be less than the one he received. But Ware's claims are based solely on the allegations in his brief, and "[b]are allegations are insufficient to prove ineffective assistance of counsel." *McCray v. State*, 107 So. 3d 1042, 1045 (¶12) (Miss. Ct. App. 2012). Additionally, Ware has not submitted affidavits to support his claim, either from himself or other potential witnesses. As a result, Ware's pretrial ineffective-assistance-of-counsel claims are more appropriately brought during postconviction proceedings. Therefore, we deny relief without prejudice as to Ware's right to pursue this claim during postconviction proceedings.

### B. Posttrial Claim

¶15. The State stipulates that the record is sufficient to address Ware's posttrial ineffective-assistance-of-counsel claims. As such, we will consider the merits.

6

¶16. Ware argues that he was prejudiced when another attorney, Mitchell Thomas, stood in for Harris during the sentencing hearing. Ware claims the trial court should have postponed the sentencing hearing until Harris could attend. He also suggests that Thomas should have objected. But Ware has failed to show how this prejudiced his case, nor did he submit any affidavits to support this assertion. During the sentencing hearing, the trial judge recessed the hearing to give Thomas time to review the State's presentence-investigation report from the Mississippi Department of Corrections with Ware. When the hearing reconvened, the State then introduced the report into evidence with no objection by Thomas. The report contained certified copies of Ware's prior felony convictions. We find no merit to this issue.

¶17. We note that although Ware claims that Harris failed to file a posttrial motion, the record indicates Harris did file a motion for a new trial.

### III.   Illegal Sentence

¶18. Ware also argues that his sentence was illegal because the State failed to prove he was a habitual offender. However, the State admitted the report into evidence during the sentencing hearing. And the report contained certified copies of Ware's three prior felony convictions. Ware also claims he never saw the presentence investigation report. As previously stated, the trial judge recessed the sentencing hearing in order for Thomas and Ware to review the report. This issue is without merit.

¶19. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**

7