# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-01416-COA

**DONAVAN JAMES PRATHER A/K/A**                      **APPELLANT**
**DONAVAN PRATHER**

**v.**

**STATE OF MISSISSIPPI**                                       **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/17/2021 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/27/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McCARTY AND SMITH, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     A Lowndes County Circuit Court jury convicted Donavan Prather of aggravated assault, armed robbery, and kidnapping, and the circuit court sentenced him to serve a combined thirty-five years in the custody of the Mississippi Department of Corrections (MDOC).  Prather appeals arguing that (1) he was denied effective assistance of counsel; (2) there was insufficient evidence to support the conviction for aggravated assault, and (3) the verdict is against the overwhelming weight of the evidence.  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On September 8, 2020, Dillon Barton went to Sam Melcher's house to pay him $200

for helping Dillon's aunt move. James Williams and Olivia Townley were also at Melcher's house. Barton "smoked a little weed" with the others while standing outside around a bonfire. Around 9:00 p.m., Barton's mother sent him a text asking him to run an errand. As Barton was preparing to leave, Prather and Brandon Runnels arrived. Prather was armed with a pistol; Runnels had an assault rifle (AR).

¶3.     Prather talked to Melcher for a moment and then told everyone except for Barton to go inside. Prather pointed the pistol at Barton and told him, "[G]ive me everything you've got." Barton gave Prather his truck keys, cell phone, and $350 in cash. Prather ordered Barton into Barton's truck and told him to put his hands on the steering wheel. Barton complied, and Prather got into the passenger seat and demanded more money. Runnels was standing by the vehicle, pointing the AR at Barton's head. When Barton told him he had nothing left to give him, Prather began intermittently hitting Barton with the pistol or his fists.

¶4.     According to Barton, Prather and Runnels kept him in the truck for approximately six-and-one-half hours. Finally, Prather told Barton to leave, or he would kill him. Prather and Runnels left, and the others came to help Barton. Prather returned a few minutes later, however, still armed; so Barton took off running. Melcher persuaded Prather to return Barton's keys and leave. Melcher then found Barton in the woods nearby. Barton said Melcher told him to go home and take Townley with him, reasoning, "They won't hurt you as long as [she] is with you." Townley assisted Barton with his injuries by holding his t-shirt to his bloody face. After leaving, Barton noticed Prather following his truck. Barton and

2

Townley finally lost Prather and arrived at Barton's home. Barton's mother contacted law enforcement and paramedics. After Barton and Townley gave their statements to law enforcement, Barton was taken to the hospital with injuries to his face.

¶5.     On January 15, 2021, a Lowndes County grand jury returned a multi-count indictment against Prather, charging him with aggravated assault (Count I), armed robbery (Count II), and kidnapping (Count III).[1]  A jury trial was held on November 15-17, 2021.

¶6.     Barton testified to the events as stated above. Barton claimed that he suffered injuries as a result of the assault, indicating a "scar up underneath [his] right eye." He also suffered a "small cut" on his forehead. Photos of Barton's face after the assault, the AR Runnels used, and Barton's bloody t-shirt were admitted into evidence.[2]  The State also introduced photos of Barton's truck into evidence, which showed blood on the front seat and doors.

¶7.     Although Barton insisted that he "didn't really know" Prather, he acknowledged on cross-examination that he had briefly dated Prather's ex-girlfriend Emily. Because Emily and Prather had since reunited, Barton did not think there was bad blood between him and Prather until Prather attacked him "using deadly force." Barton also speculated that Melcher (who did not testify at trial) had set him up. When asked about his injuries, Barton could not recall how many times he was struck with a gun.

¶8.     Townley testified that she was at Melcher's house that evening. Prather and Runnels

_____

[1] Prather was also indicted for accessory after the fact (Count IV). The State later moved to sever this count, which the trial court granted. In addition, the court entered an order removing a firearm enhancement as to Counts I and II.

[2] The pistol was never recovered.

3

drove up and had guns. Prather pulled Melcher over and then tried to get him to go inside. Townley said she did not feel like she had to go inside but went in anyway. She testified that after about five minutes, she went back outside onto the porch and saw Runnels pointing his gun at Barton's truck. Although Townley could not see Barton, she said "it was obvious he was in the driver's seat." Later, she saw Barton "had a bloody face when he came away from the truck."

¶9.     Townley heard Prather tell Barton, "[Y]ou've got five minutes to leave . . . [or] we're going to like hurt you or whatever." When Prather and Runnels left, she and the others began looking for Barton's keys. When Prather returned several minutes later, "[Barton] ran," and Prather gave Townley the keys. She claimed Prather threatened, "[D]on't call the cops or nothing." Barton was Townley's "only ride home[;] so [she] got in the truck." Townley said Prather and Runnels chased Barton's truck, but Barton "finally lost them." She and Barton went to Barton's house, and Barton's dad called 911. She gave a statement to law enforcement. Townley was shown the photo of Barton's face and confirmed that was what he looked like after he had been in the truck with Prather. She said she held a shirt to Barton's face to help stop the bleeding.

¶10.    On cross-examination, Townley admitted that she did not see anyone in the truck's passenger seat, nor did she actually see Prather strike Barton. However, on redirect, Townley noted that Barton did not have any injuries when she first got to Melcher's house, but when she "came back outside," she saw he was injured.

¶11.    Officer Tony Cooper, an investigator with the Lowndes County Sheriff's Department,

4

testified that he was dispatched to Barton's home on the morning of September 9, 2020. Upon arrival, he spoke with Deputy David Hunt, who indicated "there was some evidence in the victim's truck [he] needed to see." Officer Cooper took photos of the interior of Barton's truck, and he identified those photos at trial. He noted "there w[as] blood spattered throughout the vehicle on the driver's side and the passenger's side," as well as a "green bloody shirt in the floorboard."

¶12. Officer Cooper talked with Barton and Townley and recorded his interviews with them. He observed that Barton "had a large gash right below his right eye," with "[a] lot of swelling around it." There was also "a gash on his forehead above his right eye." Barton told Officer Cooper that Prather made threats against his life, such as, "If you do anything funny, you're dead." He also told the officer that Prather "punched him several times with his fist. And then he hit him twice with a pistol."

¶13. Officer Cooper testified that Townley told him that Prather and Runnels "ordered everybody to get into the house" except for Barton "[a]nd said if anybody came outside, they would be shot." Afterward, Melcher told Townley to go with Barton as "sort of [a] safety shield." Townley told the officer that Barton "was bleeding from his face"; so she used Barton's t-shirt "to try to stop the bleeding." Officer Cooper also related that Townley "said they left [Melcher's] at 4:00 that morning," and he noted that the 911 call was not received until 5:13 a.m.

¶14. Officer Cooper explained how law enforcement identified Prather and Runnels as the suspects, and he noted that "they were arrested approximately a week later." He said "a

5

Smith and Wesson AR-15 assault rifle" was recovered from Prather's vehicle, which he identified as the rifle depicted in the evidentiary photo. Officer Cooper confirmed that the AR was registered to Prather. Officer Cooper did not have testing conducted on the blood found in Barton's truck, explaining to counsel, "I've got a victim with lacerations in [his] face. And an eyewitness that says that the blood came from this victim. So I went with that would be the victim's blood." Additionally, because the defense questioned how Officer Cooper knew the AR in the photo was the one retrieved from Prather's vehicle, the trial court allowed the State to show the AR to the officer at trial to verify the serial number was the same as the one on the evidence form.

¶15.    Lieutenant Archie Williams testified regarding Prather's arrest, and he noted that the AR retrieved from Prather's vehicle was "sitting in the floorboard between his right leg and the console of the vehicle." He also identified the AR submitted into evidence as the one that was taken from Prather's vehicle.

¶16.    Deputy David Hunt testified that he responded to the 911 call and observed Barton "sitting on the couch holding a t-shirt over his right eye." Barton told the deputy that Prather "made him get in his truck, on the driver's side . . . and [Prather] got in the passenger's seat of the truck with a small pistol in his hand." With regard to his injuries, Barton informed Deputy Hunt that Prather "punched [him] several times in the face and then pistol-whipped him twice with a pistol he was holding." Townley told the deputy that Prather ordered everyone except Barton into Melcher's house. Townley also said that Prather and Runnels followed her and Barton when they left Melcher's house; so they went to Barton's house only

6

after they had "lost" Prather and Runnels.

¶17.  Dr. Patti Manning treated Barton for his injuries on September 9, 2020.  She testified that Barton "had obvious facial injuries."  Barton told Dr. Manning "he had been held up by gunpoint," and his injuries were "because they had hit him with a pistol, pistol-whipped his face."  Although she did "not think he had loss of consciousness," her examination showed "he had abrasion and bruising on the right forehead[,] . . . contusion of the right eye that was slightly swollen[,] . . . an abrasion on [his] eyebrow[,]" and "a three centimeter laceration" of his right cheekbone.  A CT scan of Barton's head "was okay"; however, Barton "did have a fracture of the zygomatic bone at the cheekbone underneath that laceration."  Barton's injuries did not require surgery, but he did need antibiotics for the "opened fracture . . . because it's highly inclined of getting infected."  Dr. Manning referred Barton to an ear, nose, and throat specialist to "see if they needed to do surgery on the bone[.]"  She also sutured the laceration on his cheek.  On cross-examination, she opined that his injuries were not "life-threatening."

¶18.  The defense moved for a directed verdict, which the trial court denied.  The jury found Prather guilty of all counts.  The trial court sentenced Prather to serve a term of ten years in the MDOC's custody for the conviction of aggravated assault (Count I); thirty years in the MDOC's custody, with ten years suspended and twenty years to serve, for the conviction of armed robbery (Count II) to run consecutively to his sentence for Count I, and to be followed by five years of supervised probation; and five years to serve in the MDOC's custody for

kidnapping (Count III) to run consecutively to his sentence in Count II.[3]

## DISCUSSION

### I. Whether trial counsel was ineffective by failing to object to prejudicial inadmissible hearsay testimony.

¶19. Both Officer Cooper and Deputy Hunt testified at trial regarding what Barton and Townley had told them about the alleged incident. Prather contends that trial counsel's failure to object on the ground that this testimony was "inadmissible hearsay" denied him effective assistance of counsel. Generally, "ineffective-assistance-of-counsel claims are more appropriately brought in postconviction relief proceedings." *Ware v. State*, 263 So. 3d 675, 678 (¶12) (Miss. Ct. App. 2018). "A claim for ineffective assistance of counsel should . . . be addressed on direct appeal where '(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.'" *Id*. (quoting *Reed v. State*, 204 So. 3d 785, 789 (¶16) (Miss. Ct. App. 2016)). Because the State stipulates that the record is adequate for this Court to make a finding, we will address Prather's claim.

¶20. In order for a defendant to prevail on an ineffective-assistance-of-counsel claim, he must first prove that trial counsel's performance "was deficient, which requires showing that counsel made errors so serious that he or she was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Swinney v. State*, 241 So. 3d 599, 613 (¶59) (Miss. 2018) (citing *Strickland v. Washington*, 466 U.S. 687 (1984)). In addition, the defendant

---

[3] The trial court also ordered Prather to pay all court costs and $175 in restitution.

must prove that counsel's "deficient performance prejudiced the defense . . . [and] deprive[d] the defendant of a fair trial[.]" *Id*.

¶21. A trial attorney's decision not to object to testimony is presumed to be strategic "if [the decision] fairly can be characterized as such." *Murray v. State*, 345 So. 3d 610, 623 (¶35) (Miss. Ct. App. 2022) (quoting *Shinn v. State*, 174 So. 3d 961, 967 (¶15) (Miss. Ct. App. 2015)). Although Prather argues that his counsel's failure to "object to the admission of narrative hearsay of the State's only witnesses to the alleged crimes cannot be written off as trial strategy," we find he has presented no evidence to overcome this presumption.

¶22. "An out-of-court statement is hearsay only if it is offered 'to prove the truth of the matter asserted.'" *O'Quinn v. State*, 349 So. 3d 1226, 1231 (¶17) (Miss. Ct. App. 2022) (quoting MRE 801(c)). For example, "out-of-court statements do not constitute hearsay when admitted not to prove the truth of the matter asserted but rather to explain an officer's course of investigation[.]" *Id*. (emphasis and internal quotation marks omitted). To the extent that the officers' testimony was offered for a non-hearsay purpose, trial counsel's failure to object would not constitute ineffective assistance.

¶23. Further, the only prejudice Prather alleges is that the State improperly "bolster[ed]" the testimony of the key witnesses. Trial counsel did object, however, to Officer Cooper's relating what Barton told him on the ground it was cumulative, arguing that "we're just going back over to what Mr. Barton testified to." The trial judge instructed the State, "Let's kind of move along." Defense counsel therefore made the proper objection for the perceived harm. Accordingly, we find no merit to Prather's claim of ineffective assistance of counsel.

9

## II. Whether there was sufficient evidence to support Prather's conviction for aggravated assault.

¶24. Prather was charged and convicted of aggravated assault under Mississippi Code Annotated section 97-3-7(2)(a)(i) (Rev. 2020), which states that "[a] person is guilty of aggravated assault if he or she . . . attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." "For purposes of the aggravated assault statute, 'serious bodily injury' means 'bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.'" *Griffin v. State*, 269 So. 3d 337, 349-50 (¶38) (Miss. Ct. App. 2018) (quoting *Rickman v. State*, 150 So. 3d 983, 986 (¶12) (Miss. Ct. App. 2014)). Prather contends that the evidence was insufficient to support his aggravated-assault conviction because "[n]o fair assessment of the facts of this case can conclude, beyond a reasonable doubt," that the injuries suffered by Barton constituted "serious bodily injury."

¶25. As the State argues, defense counsel did not raise this precise issue before the trial court. Prather's counsel instead summarily moved "for a directed verdict on the grounds that the State has not met its burden of proof on the three charges of the indictment." Later, in the motion for judgment notwithstanding the verdict, Prather simply argued that the State "failed to prove every element of the crimes of aggravated assault[.]" In *Griffin*, we held, "[A] motion for a directed verdict on the grounds that the state has failed to make out a prima facie case must state specifically wherein the state has failed to make out a prima facie case. Motions for a directed verdict must be specific and not general in nature." *Id.* at 350 (¶39)

10

(quoting *Sheffield v. State*, 749 So. 2d 123, 126 (¶10) (Miss. 1999)). As in this case, the defendant in *Griffin* argued on appeal that the State failed to prove the victim had suffered "serious bodily injury." *Id*. at 349 (¶38). We found the issue had been waived because defense counsel had only argued in the motion for directed verdict that "the State ha[d]n't met its burden by beyond a reasonable doubt." *Id*. at 350 (¶39). We likewise find that Prather is procedurally barred from raising this issue for the first time on appeal.

¶26. Regardless, we find no merit to Prather's argument. "An appeal of the trial court's denial of a directed verdict . . . is a challenge to the sufficiency of the evidence that is subject to a de novo standard of review." *Haymon v. State*, 346 So. 3d 875, 881 (¶14) (Miss. 2022) (citing *Gilmer v. State*, 955 So. 2d 829, 833 (¶5) (Miss. 2007)). "[A]ll credible evidence consistent with the defendant's guilt must be accepted as true" and "considered in the light most favorable to the State." *Davis v. State*, 866 So. 2d 1107, 1113 (¶25) (Miss. Ct. App. 2003).

¶27. Regarding the severity of Barton's injuries, Officer Cooper observed that Barton "had a large gash right below his right eye" with "[a] lot of swelling around it" and "a gash on his forehead above his right eye." The photo of Barton's injuries admitted into evidence showed a deep gash on his right cheekbone, a cut on his forehead, and bruising around his right eye. Dr. Manning testified that Barton suffered a "a three centimeter laceration" of his right cheekbone and "a fracture of the zygomatic bone at the cheekbone underneath that laceration." Barton's medical records admitted into evidence also indicated he suffered "[f]acial trauma" and a "[r]ight zygoma fracture with mild displacement." The evidence

11

further showed that Barton suffered a permanent scar underneath his eye. In *Taylor v. State*, 577 So. 3d 381, 383 (Miss. 1991), the Mississippi Supreme Court found that evidence the victim suffered bruising and bleeding to her face and a damaged nerve in her head was sufficient to support a jury instruction on aggravated assault. More recently, in *Green v. State*, 353 So. 3d 516, 519-21 (¶¶12, 18) (Miss. Ct. App. 2023), there was no issue that the victim's injuries—a fractured jaw, "nasal fractures[,] and a fracture to the orbit" of her eye—supported an aggravated-assault jury instruction. Rather, this Court upheld the trial court's ruling that the injuries did not support a lesser-included-offense instruction for simple assault. *Id*. at 521 (¶21).[4]

¶28.    Furthermore, while Dr. Manning acknowledged that Barton's injuries were not "life-threatening," the Mississippi Supreme Court has stated that an aggressor is not required to "beat his victim 'to within an inch of his life in order to be found guilty of aggravated assault.'" *Wilson v. State*, 936 So. 2d 357, 365 (¶20) (Miss. 2006) (quoting *Fleming v. State*, 604 So. 2d 280, 292 (Miss. 1992)). Rather, the "statute only requires *an attempt* to cause serious bodily injury." *Burden v. State*, 347 So. 3d 174, 177 (¶11) (Miss. 2022) (emphasis added). The jury was instructed that in order to find Prather guilty of aggravated assault, it needed only to find that Prather "intentionally, knowingly, purposefully and unlawfully cause[d] or attempt[ed] to cause serious bodily injury to [Barton] . . . by striking him in the face repeatedly with a firearm." Barton testified that Prather "hit [him] with a pistol . . .

---

[4] The supreme court in *Taylor* did find the trial court erred in refusing the defendant's lesser-included-offense instruction, noting the "the disparity in maximum punishments between the offenses." *Taylor*, 577 So. 2d at 383. In our case, a lesser-included-offense instruction was not requested.

under [his] right eye and on [his] forehead[.]" Barton said he "lost count" of how many times Prather hit him, and he confirmed that the gash under his eye and the abrasion on his forehead were caused by Prather's hitting him with a pistol. No evidence contradicted Barton's testimony. Considering the evidence in the light most favorable to the State, we find there was sufficient evidence to convict Prather of aggravated assault.

### III. Whether the verdict was against the overwhelming weight of the evidence.

¶29. Prather also contends that the verdict was against the overwhelming weight of the evidence. "When reviewing a challenge to the weight of the evidence, this Court must determine whether the trial court abused its discretion by not ordering a new trial." *Moffett v. State*, 354 So. 3d 929, 944 (¶47) (Miss. Ct. App. 2022) (citing *Daniels v. State*, 107 So. 3d 961, 963 (¶12) (Miss. 2013)). Viewing the evidence "in the light most favorable to the verdict," we will only disturb a jury's verdict on appeal "when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Dehart v. State*, 290 So. 3d 373, 376 (¶16) (Miss. Ct. App. 2020) (citations omitted). We will not, however, "act as the 'thirteenth juror'"—re-weighing the evidence, assessing witnesses' credibility, or "resolv[ing] conflicts between evidence." *Moffett*, 354 So. 3d at 944 (¶47) (quoting *Little v. State*, 233 So. 3d 288, 292 (¶20) (Miss. 2017)). "Those decisions belong solely to the jury." *Id*. (quoting *Little*, 233 So. 3d at 289 (¶1)).

¶30. To support his argument, Prather adopts his claims questioning the severity of Barton's injuries from the preceding issue, which we have already found without merit. He

13

further questions why the other witnesses to the incident were not called to testify and why none of the eyewitnesses had contacted law enforcement during Barton's detention by Prather, although he does acknowledge Townley's testimony that her phone was not charged. Finally, Prather asserts that there are material differences between Barton's and Townley's testimony.

¶31.    We find Prather's contention that the State should have called the other eyewitnesses is insufficient to show that the verdict was against the weight of the evidence. "[T]he State is not obligated 'to present proof of the breadth of its investigation.'" *Kidd v. State*, 284 So. 3d 777, 784 (¶26) (Miss. Ct. App. 2019) (quoting *Bryant v. State*, 853 So. 2d 814, 820 (¶21) (Miss. Ct. App. 2003)). Rather, "[i]t is necessary but also sufficient that the State present proof that the defendant committed the crime." *Id*.

¶32.    We agree with the State that any inconsistencies in the witnesses' testimony were "not material to the question at issue"—"whether the State proved beyond a reasonable doubt that Prather robbed, kidnapped, and assault[ed Barton] with force capable of causing serious bodily harm all while armed with a weapon." Barton and Townley both testified that Barton sustained injuries while being detained by Prather and Runnels at gunpoint. Townley also corroborated Barton's testimony that she left Melcher's house with Barton, that Prather and Runnels followed Barton's truck, and that Townley and Barton managed to escape Prather and Runnels and get to Barton's house, where his father called 911. Deputy Hunt also confirmed that he was dispatched to Barton's home at 5:13 a.m., lending credibility to Barton's testimony that Prather had detained him for over six hours. As stated, it was the

14

responsibility of the jury to resolve any conflicts in the evidence or determine the credibility of the witnesses' testimony. *Moffett*, 354 So. 3d at 944 (¶47). Based on the evidence presented, we cannot say that the jury erred in finding Prather guilty of the charges. Nor do we find that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

¶33. Accordingly, finding Prather's arguments are either waived or lack merit, we affirm his convictions and sentences.

¶34. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**