JAMES, J.,
for the Court:
¶ 1. Omar Humphrey was convicted of capital murder and sentenced to life imprisonment without the possibility of parole. Humphrey filed a direct appeal, and the Mississippi Supreme Court affirmed his conviction and sentence. The supreme court granted Humphrey’s motion for leave to file a motion for post-conviction collateral relief (PCR) in the trial court, limiting the issue to the newly discovered evidence alleged by Humphrey in his motion. Following an evidentiary hearing, the trial court denied Humphrey’s PCR motion. Humphrey appealed. Finding no error, we affirm.
■ FACTS
¶ 2. On November 6, 1997, Humphrey was indicted by a Tate County grand jury for conspiracy to commit burglary and for the capital murder of Virginia Phillips. Following a jury trial, Humphrey was found guilty of capital murder and sentenced to life imprisonment without the possibility of parole. Humphrey appealed and the Mississippi Supreme Court affirmed his conviction and sentence.[1]
¶ 3. In December 2009, Humphrey filed a motion for leave to proceed in the trial court, claiming that newly discovered evidence entitled him to a new trial. An affidavit from Patrick Reid,[2] a State witness who testified against Humphrey in his criminal trial, was attached to Humphrey’s motion. In the affidavit, Reid claimed that the statements that he provided law enforcement and his testimony at Humphrey’s trial were fabricated. Two affidavits from Dennis Carroll, Reid’s stepfather, were also attached. In the affidavits, Carroll claimed that, prior to Humphrey’s trial, Reid told him that the statements he gave to law enforcement were false. Carroll further asserted that he was subpoenaed to testify to this at Humphrey’s trial, but he was not transported to the trial from the Greene County Correctional Facility, where he was incarcerated.
¶ 4. The Mississippi Supreme Court granted Humphrey leave to file his PCR motion in the Circuit Court of Tate County, ordering the trial court to hold an evidentiary hearing regarding .the claims *563 raised in Humphrey’s application and motion.
¶ 5. On April 14, 2011, and April 2, 2012, the trial court held an evidentiary hearing.[3] At the hearing, the trial court heard testimony from Deputy Randy Doss of the DeSoto County Sheriffs Department, United States Secret Service Special Agent Patrick Davis,[4] and Reid. The court also received into evidence the Carroll affidavits.
¶ 6. Deputy Doss testified that on December 27, 1996, he was informed by a jailor that Reid, an inmate in the DeSoto County jail, requested to speak to him. Deputy Doss had Reid brought to his office, and Reid told Deputy Doss that he had information about a murder committed by Humphrey. Deputy Doss testified that he advised Reid that he was not involved in that case, but that he would contact the proper authorities. Deputy Doss contacted the Senatobia Police Department and relayed to them that an inmate had information regarding a murder in Senatobia.
¶ 7. Special Agent Davis testified that in 1996, he was an investigator for the Senatobia Police Department assigned to the Phillips ease. He stated that on December 27, 1996, he was advised that an inmate in the DeSoto County jail claimed to have information about Phillips’s murder. Special Agent Davis and Officer Fred Perez traveled to DeSoto County and met with Reid. During the interview, Reid stated that he and Humphrey were cellmates, and that Humphrey told him about his participation in the Phillips murder. According to Special Agent Davis, Reid provided details about the murder not known to the public. Reid advised Special Agent Davis that he could not read or write, so Officer Perez wrote out Reid’s statement and, after reading it back to him, had Reid sign the statement. Special Agent Davis testified that he did not threaten or physically assault Reid, nor did he promise Reid anything in return for his testimony.
¶ 8. Reid testified that he only gave the two written statements regarding Humphrey’s confession and testified against Humphrey at trial because he was beaten and threatened by law enforcement. He further testified that law enforcement promised to get him out of jail if he testified and that the police told him what to say.
¶ 9. On July 80, 2012, the trial court denied Humphrey’s PCR motion. The court found that Reid’s testimony at the hearing was not credible. The court further found that other evidence and testimony presented at the trial supported the jury’s verdict and a new trial would not produce a different result. Humphrey appeals raising the following issues: (1) whether the trial court abused its discretion in denying his PCR motion; and (2) whether his constitutional rights were violated by the State’s “known introduction of fabricated testimony.”
STANDARD OF REVIEW
¶ 10. When reviewing a trial court’s denial or dismissal of a PCR motion, we will only disturb the trial court’s *564 factual findings if they are clearly erroneous; however, we review the trial court’s legal conclusions under a de novo standard of review. Hughes v. State, 106 So.3d 836, 838 (¶ 4) (Miss.Ct.App.2012). Likewise, the standard of review after an evidentiary hearing in PCR cases is well settled: “We will not set aside [the trial court’s] finding unless it is clearly erroneous. Put otherwise, we will not vacate such a finding unless, although there is evidence to support it, ... [considering] the entire evidence [we are] left with the definite and firm conviction that a mistake has been made.” Meeks v. State, 781 So.2d 109, 111 (¶ 5) (Miss.2001) (quoting Rochell v. State, 748 So.2d 103, 109 (¶ 20) (Miss.1999)).
DISCUSSION
I. Whether the trial court erred in denying Humphrey’s PCR motion.
¶ 11. Humphrey contends that the trial court abused its discretion in denying his PCR motion. Humphrey argues that “the trial court’s factual finding that Reid was not to be believed because he could not remember exactly the events of [sixteen years] ago [was] clearly erroneous.” Humphrey further argues that Reid’s recantation was material, claiming “[Reid] was the State’s chief witness .... The only other evidence against [him], his fingerprint on the batteries of a flashlight^] ... was woefully circumstantial.” Thus, Humphrey argues that, in the absence of Reid’s testimony, the other evidence presented at the trial was not sufficient to support the jury’s verdict. We disagree.
¶ 12. We have held that “recanted testimony does not entitle a defendant to a new trial.” Esco v. State, 102 So.3d 1209, 1214 (¶ 13) (Miss.Ct.App.2012) (quoting Russell v. State, 849 So.2d 95, 107 (¶ 15) (Miss.2003)). Further, “as a general rule, recanted testimony is ‘exceedingly unreliable and is regarded with suspicion; and it is the right and duty of the court to deny a new trial where it is not satisfied that such testimony is true.’ ” Id. (citing Bradley v. State, 214 So.2d 815, 817 (Miss. 1968)). Additionally, “to succeed on a motion for [a] new trial due to recanted testimony, a defendant must show that the newly discovered evidence, such as recanted testimony, would probably produce a different verdict.” Pruitt v. State, 100 So.3d 971, 973 (¶9) (Miss.Ct.App.2012) (citing Meeks, 781 So.2d at 112 (¶ 8)). Finally, we note that at an evidentiary hearing on a PCR motion, the trial court “sits as the trier of fact and resolves any credibility issues.” Esco, 102 So.3d at 1214 (¶ 13) (citing Henderson v. State, 769 So.2d 210, 213 (¶ 8) (Miss.Ct.App.2000)).
¶ 13. Humphrey first argues that the trial court erred in finding little credibility to Reid’s testimony at the hearing. The trial court found that Reid’s testimony at the hearing was not credible, writing that “[Reid] had recollection of certain events, but not of other[s] .... This court is not satisfied regarding the truthfulness of [Reid]’s current version of the events.” We find that the trial court, sitting as the trier of fact, was able to assess the credibility of Reid and other witnesses during the hearing.
¶ 14. Deputy Doss and Special Agent Davis’s testimony at the hearing was consistent with their testimony at Humphrey’s trial. Special Agent Davis testified that he neither threatened nor physically coerced Reid in any way. Reid’s testimony at the hearing — which, as we note above, should be regarded with suspicion — was inconsistent with his testimony on two previous occasions. At the hearing, Reid testified law enforcement promised to get him out of jail if he testified against Humphrey. However, at a pretrial suppression hearing and during Humphrey’s trial, Reid testi- *565 fled that he had not been promised anything in return for his testimony. During the hearing, Reid also testified that he was threatened and beaten by law enforcement in order to coerce him to testify against Humphrey and that law enforcement told him what to say. However, on cross-examination, Reid stated that he was not threatened until two weeks after he gave the statements to Special Agent Davis and Officer Perez implicating Humphrey in the murder. Furthermore, Reid could not identify who beat him or when the alleged beatings occurred. Nor could Reid remember which law enforcement officer threatened him. Upon reviewing the record, we find nothing to support Humphrey’s argument that the trial court abused its discretion in assessing the credibility of Reid’s testimony.
¶ 15. Humphrey next argues that the trial court abused its discretion by not granting him a new trial. In denying Humphrey’s PCR motion, the trial court found:
Upon review of the transcript of the court proceedings during the trial, although Reid’s testimony, if in fact was perjured and was false at the trial[,] could be considered material, ... based on the evidence presented at the two hearings, the court finds that the result of a new trial would not be different than the verdict rendered in the prior trial.
After reviewing the record, we agree with the trial court’s findings.
¶ 16. As noted above, our precedent requires Humphrey to show that the newly discovered evidence, such as recanted testimony, would probably produce a different verdict. During Humphrey’s trial, other testimony and evidence was presented establishing Humphrey’s involvement in the crime.
¶ 17. Jean Epps, who was employed by Phillips as a caregiver, testified that Humphrey visited her house twice on the night prior to the murder. During the first visit, Humphrey asked Epps about money Phillips allegedly kept in the house. According to Epps’s testimony, Humphrey told Epps that “all he wanted was the money .... He wasn’t going to do [anything] but tie [Phillips] up.”
¶ 18. Reginald Brooks testified that Humphrey discussed his plans to burglarize the Phillips house with him on several occasions in the days and weeks prior to Phillips’s murder in an attempt to enlist Brooks’s participation. Brooks further testified that in the early morning hours of October 31, 1996, the day of the burglary and murder, while in the car with Humphrey and Chris Marshal, Brooks observed them making preparations for the burglary. Finally, Humphrey’s fingerprints were found at the scene of the burglary.
¶ 19. We find that there was sufficient evidence presented at the trial to support the jury’s verdict and that Humphrey has failed to show that a new trial would produce a different result. Accordingly, we find that the trial court acted within its discretion in denying Humphrey’s PCR motion.
II. Whether Humphrey was denied due process.
¶ 20. Humphrey argues that the State violated his federal and state due-process rights when the State: knowingly used perjured testimony at his trial; failed to disclose that Reid received a deal in exchange for his testimony at trial; and when Reid, as an “agent of the State,” questioned Humphrey about the murder without informing him of his Miranda[5] rights.
*566 A. Perjured Testimony
¶ 21. “[W]here ⅛ may be established that a conviction has been obtained through the use of false evidence or perjured testimony, the accused’s rights secured by the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States are implicated.” Pearson v. State, 428 So.2d 1361, 1363 (Miss.1983). In order to prove a due-process violation, Humphrey must demonstrate: “(1) that a witness for the State testified falsely; (2) that such testimony was material; and (3) that the prosecution knew that the testimony was false.” Thomas v. State, 45 So.3d 1217, 1222 (¶ 21) (Miss.Ct.App.2010) (quoting Knox v. Johnson, 224 F.3d 470, 477 (5th Cir.2000)).
¶ 22. On the record here under review, Humphrey does not present us with the facts sufficient to grant him relief under these established principles of law. Humphrey has failed to demonstrate that Reid testified falsely at his trial or that the State knowingly presented false testimony. The only evidence offered to support the allegation of perjury was Reid’s recantation at the evidentiary hearing, and the trial court, sitting as the trier of fact, was not satisfied as to the truthfulness of Reid’s recantation. We find this issue to be without merit.
B. Humphrey’s Remaining Claims
¶ 23. Finally, Humphrey argues that the State violated his federal and state due-process rights by failing to disclose that it had entered into an agreement with Reid in exchange for his trial testimony. Humphrey also argues that his rights were violated when Reid, acting as an “agent of the State,” questioned him about the murder without informing him of his Miranda rights.
¶ 24. We find that both arguments have already been rejected by the Mississippi Supreme Court in Humphrey’s prior appeal. Humphrey, 759 So.2d at 378 (¶ 25) (“Nothing in the record indicates that Reid was an agent of the State .... [T]he decision to tender a plea offer to Reid was made and communicated to him before he tendered any information regarding Humphrey.”) This finding is supported by testimony at the trial and by the testimony of Deputy Doss and Special Agent Davis at the evidentiary hearing. The only evidence to the contrary is Reid’s new version of events about which he testified at the hearing. However, Reid’s testimony at the hearing was inconsistent and at times contradictory. On direct examination, Reid testified that he agreed to testify against Humphrey after he was threatened and beaten. Later, on cross-examination, Reid testified that the alleged threats did not occur until a couple of weeks after he gave the statements to Special Agent Davis and Officer Perez. The trial court was within its discretion in finding that Reid’s testimony was not credible. Therefore, this issue is without merit.
¶25. We find no merit to the issues raised by Humphrey. Accordingly, the Tate County Circuit Court’s denial of Humphrey’s PCR motion is affirmed.
¶ 26. THE JUDGMENT OF THE TATE COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TATE COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR.

. Humphrey v. State, 759 So.2d 368, 387 (¶ 63) (Miss.2000) (holding regarding admissibility of expert-witness testimony superceded by statute as discussed in Mississippi Transp. Comm’n v. McLemore, 863 So.2d 31, 39 (¶ 22) (Miss.2003)).

. Throughout the record, Reid’s name is spelled both "Reid” and "Reed.” For the sake of clarity and consistency, we use "Reid” throughout this opinion.

. The trial court granted Humphrey a continuance at the hearing because his witness was not transported to court. However, due to travel arrangements, the court allowed the State to put on two of its witnesses on April 14, 2011. Thus, the parties proceeded out of turn.

. In 1996, Davis was an investigator for the Senatobia Police Department and was assigned to the Phillips murder. At the time of the hearing, Davis served as a United States Secret Service special agent. For consistency, we refer to him as Special Agent Davis throughout this opinion.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).