# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01485-COA

**KACY WILLIAMS**                                                                  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/11/2016 |
| TRIAL JUDGE: | HON. MARGARET CAREY-MCCRAY |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/30/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., FAIR AND GREENLEE, JJ.**

**LEE, C.J., FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.     After a bench trial in the Leflore County Circuit Court, Kacy Williams was convicted of possession of a firearm by a convicted felon. Williams was sentenced as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2015) to life without parole. Williams filed posttrial motions, which the trial court denied.

¶2.     Williams now appeals. He is represented by the Office of State Public Defender. His appellate attorney raised two issues on appeal: (1) Williams's sentence is disproportionate to the crime, and (2) the evidence was insufficient to support the guilty verdict. Williams

also filed a pro se brief, raising additional issues on appeal: (3) defective indictment; (4) the trial court erred by granting the State's motion to amend the indictment; (5) the State failed to disclose a witness; and (6) ineffective assistance of counsel. Finding no error, we affirm.

**FACTS**

¶3. On December 17, 2014, officers from the Greenwood Police Department were dispatched to the scene of a reported shooting near McLaurin Street and Avenue F in Greenwood, Mississippi. At the scene of the shooting, officers secured the area, noting several spent shell casings, a bicycle, and bullet holes in nearby vehicles. The victim, Alfonzo Hemphill, had already been transported to the local hospital. When interviewed by the police, Alfonzo told officers that Williams had shot him twice in the stomach.

¶4. Williams and Alfonzo's sister, Diane Hemphill, had been in a relationship and had a son together. Their relationship deteriorated such that Diane, fearing for herself and her son, obtained a domestic-violence protection order on December 10, 2014.[1] This order, which was still in effect at the time of the shooting, prohibited Williams from contacting Diane, her child with Williams, her other two children, and Alfonzo. Alfonzo and Diane each testified that Williams had threatened them on different occasions with violence. Diane testified that Williams told her he would "blow her brains out." Alfonzo testified that Williams had threatened to shoot him.

¶5. Alfonzo stated that on the day of the shooting, he was waiting outside a local store

---

[1] Testimony during trial indicated that this protective order had been put in place earlier and renewed several times. However, the only order in the record on appeal is dated December 10, 2014.

when he saw Williams and Williams's father drive past in a truck. Due to Williams's recent threats, Alfonzo retrieved his gun from his car. Williams came back a few minutes later, riding a bicycle. Alfonzo testified that Williams brandished a gun and then shot him twice, stating, "I told you I was going to get you." Alfonzo fired back, but did not hit Williams. Williams then fled the scene, leaving the bicycle behind. Williams was arrested months later in Georgia. Williams was indicted for attempted murder and possession of a firearm by a convicted felon. The charges were tried separately.

## DISCUSSION

### I. Sentence

¶6. In his first issue, Williams argues that a life sentence for possession of a firearm by a convicted felon is disproportionate to the crime and constitutes cruel and unusual punishment. Williams claims that applying the proportionality test found in *Solem v. Helm*, 463 U.S. 277, 290-91 (1983), necessitates a finding that his sentence was disproportionate. However, *Solem* was overruled in *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), to the extent that the proportionality test should only apply when a comparison of the crime to the sentence leads to an inference of "gross disproportionality." Case law has consistently held that sentences under the habitual-offender statute do not constitute cruel and unusual punishment. *See Huntley v. State*, 524 So. 2d 572, 575 (Miss. 1988); *Jackson v. State*, 483 So. 2d 1353, 1355 (Miss. 1986); *McKnight v. State*, 187 So. 3d 635, 653 (¶64) (Miss. Ct. App. 2015); *Cummings v. State*, 29 So. 3d 859, 861 (¶5) (Miss. Ct. App. 2010). Here, Williams's life sentence complies with section 99-19-83, which provides:

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more, whether served concurrently or not, in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence, as defined by Section 97-3-2, shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole, probation or any other form of early release from actual physical custody within the Department of Corrections.

¶7. The State presented evidence showing that Williams was sentenced to and served terms of one year or more in a state penal institution for two prior felony convictions—aggravated assault and sale of cocaine—and one of these felonies—aggravated assault—was a crime of violence. *See* Miss. Code Ann. § 97-3-2(1)(c) (Rev. 2014); *Davis v. State*, 680 So. 2d 848, 851 (Miss. 1996) (Aggravated assault is a crime of violence within the meaning of the habitual-offender statute.). Thus, it is clear that Williams met the requirements to be sentenced as a habitual offender to life imprisonment without parole under section 99-19-83. Williams's sentence does not lead to an inference of "gross disproportionality" as is required to reach the *Solem* analysis. This issue is without merit.

## II. Insufficient Evidence

¶8. In his next issue, Williams argues that the evidence was insufficient to support the guilty verdict. When determining whether the State presented legally sufficient evidence to support the verdict, "[t]his Court may only reverse 'where one or more of the elements of the offense charged is lacking to such a degree that reasonable jurors could only have found the defendant not guilty.'" *Robinson v. State*, 794 So. 2d 293, 296 (¶12) (Miss. Ct. App. 2001)

4

(quoting *Reed v. State*, 749 So. 2d 179, 180 (¶3) (Miss. Ct. App. 1999)). "[A]ll evidence supporting a guilty verdict is accepted as true, and the prosecution must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence." *Jerninghan v. State*, 910 So. 2d 748, 751 (¶6) (Miss. Ct. App. 2005) (citation omitted). In a bench trial, the trial judge is charged with the responsibility of weighing and considering the conflicting evidence of the witnesses and determining whose testimony should be believed. *Van Norman v. State*, 114 So. 3d 799, 802 (¶16) (Miss. Ct. App. 2013).

¶9. Mississippi Code Annotated section 97-37-5(1) (Rev. 2014) states that "[i]t shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm. . . ."[2] The State had to prove that Williams was a convicted felon and that he possessed a firearm. Williams admitted that he was a convicted felon. And Alfonzo Hemphill testified that he saw Williams holding a gun. "[W]itness testimony may be sufficient to convict a defendant of possession of a weapon by a felon. . . . This is so even if no weapon is recovered." *Edwards v. State*, 966 So. 2d 837, 839 (¶10) (Miss. Ct. App. 2007). We find that there was sufficient evidence from which the trial judge could find all the elements of the crime existed beyond a reasonable doubt. This issue is without merit.

### III. Defective Indictment

### IV. Motion to Amend Indictment

---

[2] Section 97-37-5(1) contains exceptions for anyone who "has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the United States Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this section." None of these exceptions apply to Williams.

¶10.    Both of these issues are related, so we will address them together. Williams argues that his indictment was defective for incorrectly charging him with possession of Alfonzo's gun and that the trial court erred in granting the State's motion to amend the indictment.

¶11.    On the morning of trial, the State moved to amend the indictment in order to remove the language describing the type of gun. The indictment stated that Williams "did unlawfully, willfully and feloniously have or possess unlawfully a firearm; a SAR Arms 9mm semi-automatic handgun . . . ." The gun described was the one used by Alfonzo and turned over to the police after the shooting. The gun used by Williams was never recovered. Once the State realized the error, it moved to amend the indictment to remove the language describing the type of gun. Williams objected, stating that the change was substantive and prejudicial. The trial court granted the State's motion, finding that the change was one of form and that Williams was not unfairly surprised or prejudiced.

¶12.    Amendments to indictments are allowed if they contain defects of form and not of substance. *Ivy v. State*, 792 So. 2d 319, 321 (¶4) (Miss. Ct. App. 2001). An indictment can be amended "if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case." *Miller v. State*, 740 So. 2d 858, 862 (¶13) (Miss. 1999) (citation omitted). In this instance, "[t]he language in section 97-37-5(1) is clear. Possession of any firearm is prohibited." *Jones v. State*, 203 So. 3d 657, 660 (¶2) (Miss. Ct. App. 2016). "[T]he listing in the indictment of the type of firearm possessed . . . is not an element of the crime . . . ." *Estes v. State*, 782 So. 2d 1244, 1254 (¶26) (Miss.

6

Ct. App. 2000). The State was required to prove that Williams possessed a gun, not a specific type of gun. Furthermore, Williams's defense was that he did not possess a gun and did not shoot Alfonzo. We cannot find any error by the trial court in granting the motion to amend the indictment. This issue is without merit.

### V. Failure to Disclose Witness

¶13. Williams next contends that the State failed to disclose that Diane would be called as a witness. Williams never objected when Diane was called to testify, nor did he raise the issue in posttrial motions; thus, this issue is waived. *See Jones v. State*, 915 So. 2d 511, 513 (¶7) (Miss. Ct. App. 2005). Furthermore, nothing in the record indicates that the State failed to disclose Diane as a witness prior to trial. This issue is without merit.

### VI. Ineffective Assistance of Counsel

¶14. In his final issue on appeal, Williams argues his trial counsel was ineffective "for failing to discontinue cross and request mistrial on insufficient testimony showing substantial contradiction of two state witnesses." On direct appeal, a claim for ineffective assistance of counsel, "should only be addressed when '(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.'" *Reed v. State*, 204 So. 3d 785, 789 (¶16) (Miss. Ct. App. 2016) (quoting *Johnson v. State*, 196 So. 3d 973, 975 (¶7) (Miss. Ct. App. 2015)). Here, the parties do not stipulate that the record is adequate for the appellate court to make a finding on direct appeal. "Thus, the only proper inquiry is whether the record affirmatively shows that [the defendant]

was denied effective assistance of counsel." *Id*. "Where the record cannot support an ineffective-assistance-of-counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for [postconviction relief]." *Id*. (quoting *Johnson*, 196 So. 3d at 975 (¶8)).

¶15. In an ineffective-assistance-of-counsel claim,

> a defendant must show that: (1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense. The burden of proof rests with the defendant to prove both prongs. Under *Strickland*,[3] there is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. To overcome this presumption, the defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.

*Renfrow v. State*, 202 So. 3d 633, 636 (¶7) (Miss. Ct. App. 2016) (quoting *Maggitt v. State*, 26 So. 3d 363, 365 (¶12) (Miss. Ct. App. 2009)). We look "at the totality of circumstances to determine whether counsel's efforts were both deficient and prejudicial." *Howell v. State*, 163 So. 3d 240, 259 (¶49) (Miss. 2014) (quoting *Williams v. State*, 73 So. 3d 1125, 1129 (¶12) (Miss. 2011)).

¶16. Williams contends that Diane's and Alfonzo's testimonies were contradictory; thus, his attorney should have ended his cross-examination of Alfonzo and moved for a mistrial. It is possible that Williams's trial counsel continued his cross-examination in order to highlight the inconsistencies, hoping that the trial judge would resolve them in Williams's favor. Regardless, there is a presumption that decisions made by defense counsel are strategic, and this Court "will not second-guess counsel's decisions that fairly may be

---

[3] *Strickland v. Washington*, 466 U.S. 668 (1984).

8

characterized as strategic." *Shinn v. State*, 174 So. 3d 961, 966 (¶12) (Miss. Ct. App. 2015). "We presume that decisions not to object to testimony were strategic if they fairly can be characterized as such." *Id*. Williams has failed to show his trial counsel's performance was deficient. This issue is without merit.

¶17. **AFFIRMED.**

    **IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**