# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01260-COA

JAMES WILSON McDOWELL A/K/A JAMES McDOWELL      APPELLANT

v.

STATE OF MISSISSIPPI      APPELLEE

DATE OF JUDGMENT: 11/16/2018
TRIAL JUDGE: HON. LAWRENCE PAUL BOURGEOIS JR.
COURT FROM WHICH APPEALED: HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL
DISTRICT ATTORNEY: JOEL SMITH
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 02/22/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WILSON, P.J., McDONALD AND LAWRENCE, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. A Harrison County Circuit Court jury found James Wilson McDowell guilty of first-degree murder pursuant to Mississippi Code Annotated section 97-3-19(l)(a) (Rev. 2014) and unlawful possession of a firearm by a felon pursuant to Mississippi Code Annotated section 97-37-5 (Rev. 2014) on November 9, 2018. The circuit court sentenced McDowell as a habitual offender to life imprisonment for both counts, to be served concurrently, without eligibility for parole in the custody of the Mississippi Department of Corrections (MDOC). On November 20, 2018, McDowell moved for judgment notwithstanding the verdict (JNOV)

or, in the alternative, a new trial. The circuit court denied McDowell's motion on February 4, 2019. After the circuit court denied the motion, McDowell appealed on August 12, 2019.[1] Finding no reversible error, we affirm.

**Statement of the Facts**

¶2. McDowell worked in Corpus Christi, Texas, as a construction worker while also pursuing a music career. He came to Biloxi, Mississippi, to finalize a record deal and receive advanced payment. When McDowell arrived, on February 21, 2017, his adopted sister, Charity Roxanne McDowell and her boyfriend, Michael "Mike" Taylor, picked him up at the bus station. McDowell was carrying a gun, a "Hi-Point .45," that he hid under the passenger seat in Charity's car. That night, McDowell stayed at Dennis Caldwell's house,[2] where Charity was also staying temporarily.

¶3. On the morning of February 27, 2017, Charity and Mike picked up their friend, Deverick Johnson. Ultimately, Mike dropped Deverick off near Lang Avenue. Later that day, Charity and Mike picked up McDowell from Dennis's house. McDowell immediately looked for his gun that he had left in Charity's car, but he could not find it. Charity informed McDowell that Deverick was the only other person who had been in the backseat of her car that day. They tried unsuccessfully to reach Deverick—by phone and by going to his house. Figuring that Deverick would be at his cousin, Devin Johnson's house, McDowell, Charity, and Mike decided to go to Devin's house located at 109 North Lang Avenue in Long Beach,

---

[1] The circuit court granted McDowell's motion to file an out-of-time appeal.

[2] Dennis Caldwell is the father of some of Charity's children.

2

Mississippi.[3] McDowell planned to question Deverick about the missing gun.

¶4. Mike parked the car across the street from Devin's house. Deverick's car was not there, but Deverick was, sitting with his girlfriend, Jacqueline "Jackie" Waizenegger, in her silver Kia Optima.

¶5. According to McDowell, Mike exited Charity's car to speak to Deverick. Mike returned and told McDowell that Deverick stated that he did not have the missing gun.[4] At that point, McDowell walked over to Jackie's vehicle and got into the backseat behind Deverick. McDowell said that he asked Deverick about the gun, but Jackie interrupted, stating that they did not know anything about a gun.

¶6. What happened next was in dispute. McDowell claimed that when he opened the door to leave the vehicle, Deverick stated, "I ain't got to steal nothing. I will take your shit," meaning that he was the type of person who robs people face-to-face. McDowell claimed he got out and saw Deverick reach under his seat. Thinking that Deverick was about to shoot him, McDowell then leaned back into the car and shot Deverick first. Jackie disputed this, claiming that after McDowell and Deverick had a conversation, McDowell shook Deverick's hand, and suddenly and without provocation, McDowell shot Deverick multiple times before running away from the vehicle.

¶7. McDowell ran back to Charity's car, firing gunshots at other people in the area as he was running, and they drove off. Charity, Mike, and McDowell fled to Dennis's house. All

---

[3] Devin's house was also known as "the chill spot."

[4] Charity and Mike disputed that Mike went to Jackie's car and spoke with Deverick.

went into the house for a few minutes, and then Mike and Charity left. Although Mike wanted to call the police, Charity did not because she was afraid and wanted to protect her brother. Neither Mike nor Charity called the police.

¶8. Meanwhile, Officer James Balius and Battalion Chief Pete McGoey responded to a 911 call from the site of the shooting. Upon their arrival, they found a black male, later identified as Deverick, seated in the front passenger seat of Jackie's car. They checked to see if Deverick was responsive; he was not, and he died at the scene.[5] Karenza Denson, the Gulfport Police Department's crime scene technician, collected three .45-caliber Hornady shell casings from Jackie's car. She also found a Hi-Point pistol under Deverick's seat.

¶9. The police went to Dennis's house looking for Mike and Charity. Dennis was there along with McDowell who gave police a false name, "Raul McDowell." Police informed them that there had been a murder in Long Beach and that Mike and Charity were suspects. Dennis called Charity to tell her that the police were at the house. When Charity and Mike returned, they were arrested for being accessories after-the-fact to murder.[6] Investigator Patrick Craig interviewed Charity and Mike who identified James McDowell as the shooter. The police also learned that "Raul McDowell" was actually James McDowell and that they returned to Dennis's house only to find that McDowell had fled. The police, however, did

---

[5] Dr. Mark LeVaughn, the medical examiner, determined that the cause of Deverick's death was a single gunshot wound to the head. It was Dr. LeVaughn's opinion that Deverick was facing away from the shooter.

[6] Mike and Charity both pled guilty to being accessories after the fact of murder.

find McDowell's gun hidden underneath the steps of Dennis's back porch.[7] At trial, McDowell testified that he hid the gun under the steps. Thereafter, Detective Quinnelly received a SWAT text that McDowell was located at Carl Tate's house, where the SWAT team arrested him.

¶10. During his interview with the police, McDowell said that on February 27, 2017, the day of the shooting, he had been babysitting Dennis's children all day. At trial, McDowell subsequently admitted that he shot Deverick.

### Procedural History

¶11. On June 11, 2018, a Harrison County grand jury indicted McDowell for one count of first-degree murder pursuant to Mississippi Code Annotated section 97-3-19(l)(a)[8] and one count of unlawful possession of a firearm by a felon pursuant to Mississippi Code Annotated section 97-37-5.[9] On September 27, 2018, the State moved to amend McDowell's indictment to add a habitual offender charge pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2015)[10] based on the following three crimes: (1) on April 29, 2008, McDowell was

---

[7] Lori Beall testified that the shell casings from the crime scene matched McDowell's .40-caliber handgun, a Glock model 27, found under Dennis's back porch.

[8] Mississippi Code Annotated section 97-3-19(1)(a) defines first-degree murder as the following: "The killing of a human being without the authority of law by any means or in any manner . . . [w]hen done with deliberate design to effect the death of the person killed, or of any human being[.]"

[9] Mississippi Code Annotated section 97-37-5(1) provides that "[i]t shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm . . . ."

[10] A habitual offender is defined as "a person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges

5

convicted of possession of a controlled substance (a felony) and was sentenced to a term of fifteen years in the custody of the MDOC; (2) on April 29, 2008, McDowell was convicted of shooting into a dwelling and was sentenced to a term of ten years in the custody of the MDOC; and (3) on December 2, 2013, McDowell was convicted of unlawful possession of a firearm by a felon and was sentenced to a term of ten years in the MDOC. The court granted the amendment on November 6, 2018.

¶12. The trial took place on November 6, 2018, through November 9, 2018. The State presented seventeen witnesses, including key witnesses Charity, Mike, and Jackie, who all testified that McDowell shot Deverick without provocation and ran away from the car while shooting at other people. Charity and Mike testified that McDowell pointed the gun at Mike to force him to drive away from the scene. The other witnesses were persons at the scene of the crime, law enforcement, and expert witnesses. After the State rested its case-in-chief, McDowell's counsel moved for a directed verdict on first-degree murder and possession of a firearm by a felon because the State failed to meet its burden to prove the elements for each count. The court, considering the evidence before it, denied McDowell's motion. McDowell testified, as the only witness in his defense, that he did shoot Deverick but that he did so in self-defense. After the four-day trial, the jury found McDowell guilty of first-degree murder and unlawful possession of a firearm by a felon. McDowell was sentenced to life imprisonment for both counts, to run concurrently, without eligibility for parole or early

separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution." Miss. Code Ann. § 99-19-81.

6

release in the custody of the MDOC. The final judgment was entered on November 16, 2018.

¶13. McDowell filed a motion for judgment notwithstanding the verdict (JNOV) or a new trial on November 20, 2018, arguing (1) that the evidence was insufficient to support the jury verdicts;[11] (2) that the guilty verdicts were against the weight of the evidence; (3) that all of McDowell's pretrial motions that were denied in whole or in part should have been granted; (4) that the court admitted inadmissible evidence; (5) that the court erred in refusing McDowell's jury instructions; (6) that the court erred in all of its evidentiary rulings and rulings on matters of law that McDowell opposed; (7) that the court erred in overruling all of McDowell's objections made at pretrial hearings and the trial; and (8) that the court erred in sustaining all the objections made by the State at pretrial hearings and the trial. On February 4, 2019, after a hearing on the matter, the court denied McDowell's motion.

¶14. McDowell moved to file an out-of-time appeal on May 29, 2019. On August 8, 2019, the circuit court granted McDowell's motion to proceed out of time, stating that McDowell was unaware that the order denying his new trial had been entered and was under the mistaken impression that his court-appointed counsel had filed the necessary pleadings to perfect his direct appeal.[12]

---

[11] In essence, McDowell reiterated the arguments made in his motion for a directed verdict at the conclusion of the State's case-in-chief, and his request for a peremptory instruction and renewed motion for a directed verdict after the conclusion of all evidence.

[12] The record contains a corrected order because the circuit court failed to remove an old cause number on the previous order.

¶15.    McDowell appealed on August 12, 2019,[13] raising the following issues: (1) whether the court erred when it failed to sustain McDowell's motion for a directed verdict based on the insufficiency of the evidence to support the State's case regarding first-degree murder; (2) whether the circuit court committed reversible error when the court refused a jury instruction of self-defense; (3) whether the court erred in refusing to limit the jury instructions to only manslaughter and justifiable homicide; (4) whether the State knowingly presented false evidence or failed to correct the false impression of witness testimony; and (5) whether McDowell's counsel provided ineffective assistance of counsel.[14]    After reviewing the record, we find that there was no reversible error and therefore affirm McDowell's convictions and sentences.

### Standard of Review

¶16.    In determining whether the evidence is sufficient, "[t]he relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Calloway v. State*, 281 So. 3d 909, 914 (¶16) (Miss. Ct. App. 2019) (quoting *Green v. State*, 269 So. 3d 75, 79 (¶12) (Miss. 2018)). "A conviction is sufficiently supported when it can be established, beyond a reasonable doubt, that every element of the

---

[13] On September 16, 2019, McDowell moved to proceed pro se and void any motion filed by his indigent appeal attorney. This Court ordered that McDowell's request be held in abeyance until the circuit court conducted a hearing on the record to determine whether he intelligently and voluntarily waived his right to counsel. *See* M.R.A.P. 6(c)(2). On November 1, 2019, the circuit court relieved McDowell's appellate counsel of his duty after finding that McDowell intelligently and voluntarily waived his right to counsel.

[14] McDowell filed his appellant's brief with a single issue. Prior to the appellee's filing its brief, McDowell filed a supplemental brief with the remaining issues.

offense was present." *Phillips v. State*, 285 So. 3d 685, 692 (¶26) (Miss. Ct. App. 2019), *cert. denied*, 284 So. 3d 754 (Miss. 2019). "We will reverse only where with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *McCray v. State*, 263 So. 3d 1021, 1029 (¶24) (Miss. Ct. App. 2018).

¶17. "Jury instructions are generally within the discretion of the trial court, and the settled standard of review is abuse of discretion." *Johnson v. State*, 252 So. 3d 597, 599 (¶8) (Miss. Ct. App. 2017) (quoting *Moody v. State*, 202 So. 3d 1235, 1236-37 (¶7) (Miss. 2016)). This court review jury instructions as a whole and will not reverse the trial court when the jury instructions, "taken as a whole, fairly-although not perfect-announce the applicable primary rules of law." *Id.* (quoting *Bailey v. State*, 78 So. 3d 308, 315 (¶20) (Miss. 2012)).

¶18. The standard of review for a claim of denial of due process based on the admission of false testimony is a three-part analysis: "(1) that a witness for the State testified falsely; (2) that such testimony was material; and (3) that the prosecution knew that the testimony was false." *Cooper v. State*, 200 So. 3d 1065, 1076 (¶42) (Miss. Ct. App. 2016) (quoting *Thomas v. State*, 45 So. 3d 1217, 1222 (¶21) (Miss. Ct. App. 2010)).

¶19. The standard of review for claims of ineffective assistance of counsel is de novo. *Latham v. State*, 299 So. 3d 768, 772 (¶12) (Miss. 2020). "To prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was both deficient and prejudicial." *Id.* (emphasis added) (quoting *Stevenson v. State*, 283 So. 3d 697, 700 (¶10) (Miss. 2019)).

**Discussion**

## I. Whether the circuit court erred in denying McDowell's JNOV motion.

¶20. McDowell argues that the State failed to establish each and every element of first-degree murder beyond a reasonable doubt. We disagree.

¶21. This Court has stated that motions for a JNOV challenge the sufficiency of evidence presented at trial. *Strickland v. State*, 215 So. 3d 514, 516 (Miss. Ct. App. 2017) (citing *Singleton v. State*, 948 So. 2d 465, 472 (¶16) (Miss. Ct. App. 2007)). "All evidence supporting a guilty verdict is accepted as true, and the prosecution must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence." *Williams v. State*, 269 So. 3d 192, 195 (¶8) (Miss. Ct. App. 2018) (quoting *Jerninghan v. State*, 910 So. 2d 748, 751 (¶6) (Miss. Ct. App. 2005)). We will reverse a conviction "only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Lacey v. State*, No. 2019-KA-00529-COA, 2020 WL 5089425, at *5 (¶18) (Miss. Ct. App. 2020) (citing *Jerninghan*, 910 So. 2d at 751 (¶6)), *cert denied*, Order, No. 2019-CT-00529-SCT (Miss. Feb. 4, 2021). "The critical inquiry is whether the evidence shows 'beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.'" *Id.* (quoting *O'Donnell v. State*, 173 So. 3d 907, 916 (¶20) (Miss. Ct. App. 2015)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Roby v.*

10

*State*, 183 So. 3d 857, 869 (¶43) (Miss. 2016).

¶22. McDowell was convicted under Mississippi Code Annotated section 97-3-19(1)(a), which defines first-degree murder as the following: "The killing of a human being without the authority of law by any means or in any manner . . . [w]hen done with deliberate design to effect the death of the person killed, or of any human being[.]" In order to prove first-degree murder, the State must prove beyond a reasonable doubt that McDowell (1) killed Deverick; (2) without authority of law; and (3) did so with deliberate design to effect Deverick's death.

¶23. In this case at bar, the court properly instructed the jury on the elements of first-degree murder:

Jury Instruction S-1

If you find from the evidence in this case beyond a reasonable doubt that: 1) On or about February 27, 2017, in the First Judicial District of Harrison County, Mississippi, 2) the Defendant, McDowel [sic] WILSON MCDOWELL, did willfully, feloniously and without authority of law, kill and murder Deverick Johnson, a human being, 3) with deliberate design to effect the death of Deverick Johnson, 4) and not in necessary self-defense, then you shall find the Defendant, McDowell [sic] WILSON MCDOWELL, Guilty of First Degree Murder, Count I. If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant Not Guilty of First-Degree Murder, Count I.

The court also instructed the jury on the meaning of "deliberate design":

Jury Instruction S-3

"Deliberate" always indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences. "Design" means to calculate, plan, or contemplate. "Deliberate design" to kill a person may be formed very quickly and perhaps only moments before the act of killing the person. However, a "deliberate design" cannot be formed at the

11

very moment of the fatal act.

¶24. Here, accepting all the evidence as true and favorable to the State, we find that the evidence was sufficient for a jury to find that McDowell killed Deverick with deliberate design without authority of law. The State presented seventeen witnesses, including key witnesses Charity, Mike, Jackie, and Devin who were all at the scene of the crime at the time of the shooting. All of these witnesses testified that there was no yelling, arguing, tussling, fighting, or scuffling prior to hearing gunshots. Furthermore, all the witnesses testified that McDowell ran to Charity's car after the shooting but continued to fire shots at other people on the street. Charity and Mike testified that once McDowell made it back to the car, he admitted that he had shot Deverick. They also testified that McDowell pointed the gun at Mike and instructed him to drive away from the scene while waving the gun at both Mike and Charity.

¶25. Jackie specifically testified that while McDowell was in the car with her and Deverick, there was "no yelling, threats, fight, or struggle" between Deverick and McDowell, and neither of them appeared to be angry. But Jackie stated after a moment of silence, McDowell opened the door, shook Deverick's hand, and told him he would see him later. Suddenly, she heard a gunshot that scared her. She then saw Deverick's body shaking. Jackie looked back at McDowell who gave her what she described as an "oh, crap" look and then ran away from the vehicle.

¶26. Also, McDowell's actions and statements were contradictory. In his initial statement to the police, McDowell said that he was watching Dennis's children at the time of the

12

shooting. However, at trial, McDowell testified that he shot Deverick but did so "out of self-defense." Yet McDowell did not attempt to call the police or seek help. Instead, he ran to Charity's car while continuing to fire gunshots in the air. McDowell testified why he did this:

> Maybe they are fixing to try to jump out the car and fixing to try to shoot at me too and fixing to try to come kill me and rob me too, so that's why I started shooting at the other cars so they wouldn't try to run down and come rob me too, and I jumped in the car.

McDowell admitted that he had not seen anyone else who had a gun at the scene of the crime, but he still believed that he was being set up for robbery. He presented no evidence to support this allegation. Also, when the police arrived at Dennis's house to search for Mike and Charity, McDowell lied to the police about his identity, stating that his name was Raul McDowell. After the shooting, McDowell hid the gun that he had used to shoot Deverick, which was eventually recovered by the police. When questioned by the police, instead of admitting to the murder as he did at trial, he said he was babysitting Dennis's children. McDowell never told the police that he shot Deverick in self-defense as he later testified at trial.

¶27. Furthermore, Charity and Allison Pujul, a Harrison County Sheriff's Department correctional officer, testified that when Charity and McDowell were in jail, McDowell threatened Charity in the hallway by stating, "I should have killed you, too." McDowell also admitted to this encounter at trial.

¶28. In reviewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact in this case could have found McDowell guilty of first-degree murder

beyond a reasonable doubt and that he was not acting in self-defense. Finding that there was sufficient evidence to support McDowell's conviction, we find that this issue is without merit.[15]

### II. Whether the circuit court committed reversible error when the court refused a jury instruction of imperfect self-defense theory.

¶29. McDowell argues that the circuit court committed reversible error when it refused his jury instruction on the theory of imperfect self-defense. We disagree.

¶30. "Jury instructions are generally within the discretion of the trial court, and the settled standard of review is abuse of discretion." *Morton v. State*, 246 So. 3d 895, 903 (¶18) (Miss. Ct. App. 2017) (citing *Moody v. State*, 202 So. 3d 1235, 1236-37 (¶7) (Miss. 2016)). When read together as a whole, "if the jury instructions fairly state the law of the case and create no injustice, then no reversible error will be found." *Id*. (quoting *Bailey v. State*, 78 So. 3d 308, 315 (¶20) (Miss. 2012)). "[T]he court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions or is without foundation in the evidence." *Cruz v. State*, No. 2018-KA-00277-COA, 2020 WL 1870378, at *3 (¶15) (Miss. Ct. App. 2020) (quoting *Davis v. State*, 18 So. 3d 842, 847 (¶15) (Miss. 2009)), *cert denied*, 304 So. 3d 1121 (Miss. 2020).

---

[15] Although McDowell argues that the *Weathersby* rule is relevant, it is inapplicable in this case. The Mississippi Supreme Court established that "where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge." *Owens*, 269 So. 3d at 1285 (¶21) (quoting *Weathersby v. State*, 165 Miss. 207, 147 So. 481, 482 (1933)). Here, there were clearly numerous credible witnesses who contradicted McDowell's claims.

¶31.    Mississippi Code Annotated section 97-3-15(f) (Supp. 2016) states that the killing of a human being is justifiable "[w]hen committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished."

¶32.    "Self defense or justifiable homicide is a defense to a criminal act." *Brown v. State*, 222 So. 3d 302, 307 (¶20) (Miss. 2017) (quoting *Ronk v. State*, 172 So. 3d 1112, 1126 (¶22) (Miss. 2015)). "The apprehension or fear that will justify killing another in self-defense must appear objectively real to a reasonable person of average prudence." *Nelson v. State*, 284 So. 3d 711, 716 (¶19) (Miss. 2019) (quoting *Batiste v. State*, 121 So. 3d 808, 845 (¶74) (Miss. 2013)). "The actor's apprehension must be objectively reasonable before his homicide is justified." *Id.* (quoting *Cook v. State*, 467 So. 2d 203, 207 (Miss. 1985)). In other words, would a reasonable person have feared for his life?

¶33.    "Unlike true self-defense, imperfect self-defense is not a defense to a criminal act." *Nelson v. State*, 284 So. 3d 711, 717 (¶20) (Miss. 2019) (quoting *Ronk*, 172 So. 3d at 1126 (¶22)). But it may change the nature of the crime for which the defendant can be found guilty. "Rather, under the theory of imperfect self-defense, 'an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm.'" *Bernard v. State*, 288 So. 3d 301, 313 (¶45) (Miss. 2019) (quoting *Ronk*, 172 So. 3d at 1126 (¶22)). There must be evidence that the defendant "subjectively" believed in his own mind that he was in imminent

15

danger of death or great bodily harm." *Cruz*, 2020 WL 1870378, at *4 (¶18) (quoting *Cook*, 467 So. 2d at 207).

¶34. McDowell tendered what he claimed as an "imperfect self-defense" jury instruction that was refused:

Jury Instruction D-3

The Court instructs the jury that the Defendant, McDowell [sic] Wilson McDowell, was entitled to act upon appearances. If the conduct of Deverick Lee Johnson, was such as to induce in the mind of a reasonable person a fear that death or great bodily harm was about to be inflicted by Deverick Lee Johnson, upon McDowell [sic] Wilson McDowell, situated as was the Defendant, McDowell [sic] Wilson McDowell, under all the circumstances then existing, and viewed from the standpoint of the Defendant, McDowell [sic] Wilson McDowell, then it does not matter if there was no danger. If you the jury believe that the Defendant, McDowell [sic] Wilson McDowell, acted in self-defense from a real and honest conviction that he was in danger of death or great bodily harm, then you, the jury, shall find the Defendant, McDowell [sic] Wilson McDowell, "Not Guilty", even though you, the jury, believe that at the time McDowell [sic] Wilson McDowell was mistaken and was not in any great danger.

The State objected to McDowell's imperfect jury instruction and reminded the court that it had given a self-defense jury instruction:

Jury Instruction S-5

The Court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to believe that the victim intended to kill the defendant or to do him some great bodily harm, and in addition to this, he must have reasonable grounds to believe that there is imminent danger of such act being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant acts. If you, the jury, unanimously find that the defendant acted in self-defense, then it is your sworn duty to return a verdict in favor of the defendant.

McDowell proposed another instruction on manslaughter, incorporating his alleged imperfect

16

self-defense instruction theory, which the court gave:

Jury Instruction D-13

The Court instructs the jury that if you find that the State has failed to prove all of the essential elements of the crime of Second Degree Murder, you may consider the lesser charge of Manslaughter. However, it is your duty to accept the law given to you by the Court and if the facts and the law warrant a conviction of Second Degree Murder, then it is your duty to make such a finding uninfluenced by your power to find for a lesser offense. This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge, but does justify a verdict for the lesser crime.

Therefore, if you find the Defendant Not Guilty of Second Degree Murder, then you shall proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all of the elements of the lesser crime of Manslaughter.

If you find from the evidence beyond a reasonable doubt that:

1. On or about February 27, 2017, in the First Judicial District of Harrison County, Mississippi;

2. The Defendant, McDowell [sic] WILSON MCDOWELL, did shoot and take the life of Deverick Lee Johnson with an actual, genuine belief that the killing was necessary in order to protect himself from great bodily harm or death, but;

3. That belief by the Defendant was not reasonable under the circumstances, then you shall find the Defendant, McDowell [sic] WILSON MCDOWELL, guilty of Manslaughter.

If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant, McDowell [sic] WILSON MCDOWELL, Not Guilty of Manslaughter.

¶35.    Not only was the jury given a self-defense instruction, but despite McDowell's claim,

the jury was also given an instruction on manslaughter that incorporated the element of his

imperfect self-defense claim. Therefore, the court did not err in refusing instruction D-3

17

because the jury is charged with following all the jury instructions together.

¶36. Additionally, the court was correct in refusing instruction D-3 because it was an improper statement of the law. It contains language that implies that McDowell's subjective belief alone is a defense to the crime of murder. However, as previously stated, subjective beliefs are not a defense to murder but merely a basis for providing a manslaughter instruction. Therefore, this issue is without merit.

### III. Whether the court erred in refusing to limit the jury instructions to only manslaughter and justifiable homicide.

¶37. The jury was properly instructed on the elements of first-degree murder, second-degree murder, self-defense, and imperfect self-defense manslaughter. McDowell argues that the circuit court erred in refusing to limit the jury instructions to only manslaughter and justifiable homicide. We disagree.

¶38. First, there is no crime of justifiable homicide. In *Ferrell*, the Mississippi Supreme Court made it clear that justifiable homicide is not a punishable offense:

> [O]ur law provides that the killing of a human being is not unlawful when committed in the defense of one's own person where there be reasonable grounds to apprehend a design on the part of the person killed to do some great personal injury and coupled with imminent danger of such design being accomplished. Miss. Code Ann. § 97-3-15(f) (Supp. 1984). *Such a killing is in our law labeled justifiable homicide and is not punishable.*

*Ferrell v. State*, 733 So. 2d 788, 791 (¶14) (Miss. 1999) (emphasis added) (quoting *Burge v. State*, 472 So. 2d 392, 395 (Miss. 1985)). "Justifiable homicide is a defense to a criminal act." *Brown*, 222 So. 3d at 307 (¶20) (quoting *Ronk*, 172 So. 3d at 1126 (¶22)). The jury was properly instructed on self-defense, and there was no need for any justifiable homicide

18

instruction.

¶39.    Second, the court correctly instructed the jury on the other instructions.  The court correctly gave an instruction of first-degree murder.  As previously noted, pursuant to Mississippi Code Annotated section 97-3-19, there was sufficient evidence to prove McDowell guilty of first-degree murder.  In addition, there was sufficient evidence presented to support the court's giving of the instructions on the other crimes because they are lesser offenses to first-degree murder.  The court also properly gave a proper second-degree murder jury instruction pursuant to Mississippi Code Annotated section 97-3-19(1)(b).  The jury was given an instruction on manslaughter pursuant to Mississippi Code Annotated section 97-3-47 (Rev. 2014).  Therefore, the circuit court did not err in giving the instructions to the jury.

IV.    **Whether the State knowingly presented false evidence or failed to correct the false impression of witness testimony.**

¶40.    McDowell argues that the State knowingly presented false evidence through Jackie's testimony regarding whether Deverick had a gun.  McDowell raises this issue for the first time on appeal.  "Failure to raise an issue at trial bars consideration on an appellate level." *McKnight v. State*, 187 So. 3d 635, 645 (¶24) (Miss. Ct. App. 2015) (quoting *Parisi v. State*, 119 So. 3d 1061, 1066 (¶19) (Miss. Ct. App. 2012)).  Notwithstanding the procedural bar, we find this issue is without merit.

¶41.    "The prosecution violates the defendant's rights under the Fourteenth Amendment to the United States Constitution when it knowingly presents false evidence or allows it to go uncorrected when it appears." *Robinson v. State*, 247 So. 3d 1212, 1235 (¶59) (Miss. 2018).  McDowell must demonstrate "(1) that a witness for the State testified falsely; (2) that such

19

testimony was material; and (3) that the prosecution knew that the testimony was false." *Humphrey v. State*, 159 So. 3d 560, 566 (¶21) (Miss. Ct. App. 2014) (quoting *Thomas v. State*, 45 So. 3d 1217, 1222 (¶21) (Miss. Ct. App. 2010)). A new trial is appropriate when the false testimony has "any reasonable likelihood" that may "affect the judgment of the jury." *Robinson*, 247 So. 3d at 1235 (¶59) (citing *Napue v. Illinois*, 360 U.S. 264, 271 (1959)). Furthermore, the testimony should be "material to the outcome of the case." *Id*. at 1236 (¶60).

¶42. McDowell has not met the burden of proving that the State knowingly produced false testimony through Jackie. To support his contention that Jackie falsely testified, McDowell attached an exhibit of an incomplete investigative report to his supplemental brief. But the report is not included the record.[16] Additionally, even if we were to consider the report, it does not prove that Jackie testified falsely. Officer Sandy Dyess's partial investigative report did not include any statements from Jackie. Because McDowell has not shown that Jackie's testimony was false, or that the State had improperly presented any false evidence, this issue is without merit.

### V. Whether McDowell was denied effective assistance of counsel.

¶43. McDowell argues that his trial counsel failed to interview the victim's mother or, in the alternative, failed to make use of the mother's statement to law enforcement, which would have discredited Jackie. McDowell asserts that without Jackie's testimony, the State would have no evidence that he committed murder. Additionally, McDowell argues that his

---

[16] The scope of this review on appeal is confined to the record before the trial court. *Robinson*, 247 So. 3d at 1229 (¶38).

trial counsel failed to utilize a document showing that he made a 911 call immediately after the killing occurred. Furthermore, McDowell argues that his trial counsel failed to use the GPS coordinates of his and Deverick's phones.

¶44. In order to prevail on a claim of ineffective assistance, McDowell must demonstrate "(1) that his trial attorney's performance was deficient" and (2) that this deficiency was prejudicial to his defense. *White v. State*, 59 So. 3d 633, 636 (¶12) (Miss. Ct. App. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)) (other citation omitted). McDowell must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hills v. State*, 101 So. 3d 691, 693 (¶9) (Miss. Ct. App. 2012) (quoting *Hannah v. State*, 943 So. 2d 20, 24 (¶6) (Miss. 2006)).

¶45. Mississippi Rule of Appellate Procedure 22(b) states the following regarding raising post-conviction issues to the appellate court:

> Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record. Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.

Because McDowell is not represented on appeal by the attorney who represented him at trial, under this Rule McDowell is required to raise any issues in his direct appeal that are based on facts fully apparent on the record or waive those issues in any subsequent post-conviction relief (PCR) proceeding, *Branch v. State*, 882 So. 2d 36, 49 (¶18) (Miss. 2004), including the issue of ineffective assistance of counsel.

¶46. Despite the requirement of Rule 22(b) that appellate counsel raise issues that are apparent on the record, it is still unusual for the appellate court to consider the issue of ineffective assistance of counsel in a direct appeal because there is usually insufficient evidence in the record to do so. *Ware v. State*, 301 So. 3d 605, 615 (¶45) (Miss. 2020). The Mississippi Supreme Court has held that "[o]rdinarily, claims of ineffective assistance of counsel are not addressed on direct appeal." *Owens v. State*, 269 So. 3d 1280, 1288 (¶29) (Miss. Ct. App. 2018) (quoting *Pace v. State*, 242 So. 3d 107, 118 (¶28) (Miss. 2018)), *cert. denied*, 268 So. 3d 1282 (Miss. 2019). The Supreme Court stated that "there is usually insufficient evidence within the record to evaluate the claim." *Id*. (quoting *Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003)). We address the merits of an ineffective-assistance-of-counsel claim on direct appeal "only in instances where '(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.'" *Id*. (quoting *Collins v. State*, 221 So. 3d 366, 372 (¶19) (Miss. Ct. App. 2016)). However, "if the defendant is represented by counsel who did not represent him at trial, and the facts supporting the claim are fully apparent from the appellate record, the Court may address the issue." *Williams v. State*, No. 2019-KA-01007-COA, 2020 WL 7350420, at *4 (¶23) (Miss. Ct. App. Dec. 15, 2020) (motion for rehearing pending).

¶47. After reviewing the record, we do not find it prudent to address the ineffective-assistance-of-counsel issue at this time. The parties also did not stipulate that the record is

adequate to allow this Court to make the finding without consideration of the further findings of fact of the trial judge, nor do we find the record before us is sufficient to affirmatively show an ineffective assistance of counsel. Therefore, we find this issue best left for a motion for PCR and decline to address the ineffective assistance of counsel issue.

## Conclusion

¶48. Finding no merit to McDowell's claims, we affirm his convictions and sentences. McDowell's claims of ineffective assistance of counsel are dismissed without prejudice to his right to raise those issues in a properly filed PCR motion.

¶49. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**